**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| YUEJING CONG,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN et al.,<br>Respondents. | Case No. 5:26-cv-04899-DFM<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner Yuejing Cong filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging her civil immigration detention. See Dkt. 1 ("Petition"). Respondents filed an Answer in which they do not contest the Petition's factual allegations, concede that Petitioner appears to be entitled to a bond hearing, and argue that to the extent Petitioner would be entitled to any remedy, it would be, at most, for the Court to order a bond hearing. See Dkt. 7 ("Answer"). Petitioner did not file a reply.

For the reasons set forth below, the Petition is **GRANTED**.

## II. BACKGROUND

Petitioner is a native and citizen of the People's Republic of China. See Petition ¶ 1; Dkt. 7-1 (Form I-213). Petitioner was inspected and admitted into the United States as a B-2 nonimmigrant visitor on November 13, 2022, with

an admit-until date of May 12, 2023. See Petition ¶ 16; id., Ex. A; Form I-213. In 2023, while still within her authorized period of admission, Petitioner applied for asylum and withholding of removal with United States Citizenship and Immigration Services ("USCIS"). See Petition ¶¶ 1, 17; id., Ex. A; Form I-213.

On or about May 27, 2025, USCIS issued Petitioner an Employment Authorization Document, valid through May 26, 2030. See Petition ¶ 19; id., Ex. B. Petitioner alleges, and Respondents do not contest, that she has worked continuously since obtaining employment authorization, has filed state and federal taxes, has never missed an immigration appointment or interview, has never been ordered removed, has no criminal record, and resides with her family in Los Angeles County. See id. ¶¶ 1, 20-23. Petitioner appeared for her asylum interview in July 2026. See id. ¶¶ 1, 18, 28. Petitioner's asylum application remains pending. See id. ¶ 49; Form I-213.

On August 23, 2026 at approximately 10:00 a.m., U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner in a parking lot in La Habra, California. See Petition ¶¶ 2, 24-25; Form I-213. The Form I-213 provided by Respondents indicates that ICE obtained a signed Form I-200 DHS Warrant for Arrest of Alien. See Form I-213.[1] The Form I-213 indicates that on the date of her detention, Petitioner's DNA sample was collected and she was served the following forms: I-200, I-862 Notice to Appear, I-286 Notice of Custody Determination, I-826 Notice of Rights and Request for Disposition, 1815 Notice of Fee Assessment under 8 U.S.C. § 1815, and a free attorney list. See id.[2] The Form I-213 indicates that Petitioner was provided

[1] There is no Form I-200 in the record before the Court.

[2] Petitioner alleges that ICE has not served her with a Form I-286. See Petition ¶ 26. There is no Form I-286 in the record before the Court.

with an administrative interview while at the processing area. See id. The Form I-213 indicates that Petitioner was offered voluntary departure, which she declined. See id.

The Department of Homeland Security ("DHS") placed Petitioner in removal proceedings, charging her as removable under 8 U.S.C. § 1227(a)(1)(B). See Petition ¶ 25; Dkt. 7-2 ("NTA"). The Form I-862 NTA indicates that Petitioner is scheduled for a hearing before an Immigration Judge ("IJ") on October 13, 2026. See NTA. Information available to the Court indicates that Petitioner is scheduled for a master hearing before an IJ on September 18, 2026. See https://acis.eoir.justice.gov/en/ (search A-Number: "246461607," Nationality: "China") (last accessed September 4, 2026). Petitioner alleges, and Respondents do not contest, that at no time since August 23, 2026 has any neutral adjudicator considered whether Petitioner presents a community danger or a risk of flight, whether any such risk could be mitigated by conditions of release, or whether her continued detention serves any legitimate governmental purpose. See Petition ¶ 27.

Petitioner remains detained at the Adelanto ICE Processing Center. See id. ¶ 2. Petitioner alleges claims under the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause. See id. ¶¶ 39-49. Petitioner seeks release under reasonable conditions of supervision or, alternatively, release unless Respondents provide her with an individualized bond hearing before an IJ within seven days at which the Government bears the burden of proving by clear and convincing evidence that she is a community danger or a flight risk that no condition of release can mitigate, and at which the IJ considers alternatives to detention and Petitioner's ability to pay any bond. See id. at 15-16.

Respondents contend that Petitioner is properly detained pending a potential § 1226(a) bond hearing because this is her first detention after her a

visa overstay. See Answer at 2. Respondents contend that to the extent Petitioner has not yet requested such a bond hearing, the Petition is defective on the basis that Petitioner has not exhausted her available administrative remedies. See id. Respondents contend that to the extent Petitioner is entitled to any remedy, it should be a bond hearing rather than release. See id. at 2-3.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)

### A. Exhaustion Does Not Bar the Claims Presented

Respondents argue that "to the extent Petitioner has not yet requested such a bond hearing from the Immigration Court, Petitioner has not yet properly exhausted their available administrative remedies, and her Petition is defective on that basis." Answer at 2.

A noncitizen must ordinarily exhaust available administrative remedies before challenging immigration detention under § 2241. "Once an alien has received a . . . bond hearing before an [IJ], [s/]he may appeal the IJ's decision to the Board of Immigration Appeals (BIA). If the alien is dissatisfied with the BIA's decision, [s/]he may then file a habeas petition in the district court." Leonardo v. Crawford, 646 F.3d 1157, 1159 (9th Cir. 2011). When a petitioner does not exhaust this prudential remedy, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Id. at 1160.

A petitioner "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." Id. (quoting Rojas-Garcia v. Ashcroft, 339 F.3d 814, 819

(9th Cir. 2003)). "The key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995).

Here, the record indicates that Petitioner has not yet received a bond hearing. Petitioner alleges that Respondents have treated her as a mandatory detainee and denied her the § 1226(a) custody-review process. See Petition ¶¶ 39-42. Petitioner does not allege, for example, that the IJ misapplied the bond factors or misweighed the evidence; such a claim would be correctable on appeal. Rather, Petitioner contends that the Government violated the INA and the Fifth Amendment by detaining her without an individualized custody hearing. Though Respondents concede that Petitioner is entitled to an initial bond hearing and argue that she has not yet requested one, Respondents have not actually contested Petitioner's arguments that the Government is denying her the § 1226(a) procedures. Under these circumstances, exhaustion appears futile. See, e.g. Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

**B. Petitioner's Detention Is Governed by 8 U.S.C. §1226(a)**

Section 1226(a) is the general provision governing the detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Section 1226(a) governs here, and the parties do not contend otherwise. See Answer at 2 (citing Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026)). Unlike the mandatory-detention provisions, section 1226(a) permits the Attorney General to "release the alien on . . . bond" or "conditional parole," 8 U.S.C. § 1226(a)(2); and its implementing regulation entitles a person so detained to a bond hearing before an IJ at the outset of detention, see 8 C.F.R. § 1236.1(d)(1).

Petitioner was admitted to the United States on a non-immigrant B-2 visa after inspection. See Petition ¶¶ 1, 40. A noncitizen who enters "after inspection and authorization by an immigration officer" has been "admitted."

8 U.S.C. § 1101(a)(13)(A). Petitioner has no criminal conviction that would trigger mandatory detention under § 1226(c). See Petition ¶ 1; Form I-213. Her detention is therefore governed by § 1226(a) and she is entitled to relief based on her INA claim.

### C. The *Mathews* Factors Weigh in Petitioner's Favor

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

Petitioner raises a procedural due process claim, challenging her detention without an individualized custody hearing and without the procedural safeguards the Constitution requires at such hearing. See Petition ¶¶ 43-46. Petitioner alleges that she has a fundamental liberty interest in freedom from confinement, the Government's interest in detaining her is minimal, and the risk of erroneous deprivation is total. See id. ¶ 44.[3]

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have consistently held that this principle extends to noncitizens released by DHS pending removal proceedings. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation

[3] Given the Court's disposition on Petitioner's procedural due process claim, the Court declines to reach Petitioner's substantive due process claim.

status have a liberty interest, so too does [petitioner] have a liberty interest in remaining out of custody on bond." (citations omitted)); Garro Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." (citation omitted)); Guillermo M.R. v. Kaiser, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that [p]etitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process.").

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

In the context of § 1226(a) detention, this Court has regularly applied the Mathews factors and granted—or, in non-consent cases, recommended that the District Judge grant—a habeas petition and ordered the petitioner released where the petitioner was previously apprehended by immigration authorities, released on an order of release on recognizance, and re-detained without adequate process. See, e.g., Chiquito Subero v. Johnson, No. 26-2163, 2026 WL 1288645 (C.D. Cal. May 7, 2026). In such cases, the Court has discussed the liberty interest identified in Morrissey.

Based on the record before the Court, Petitioner's circumstances are similar. The record before the Court indicates that Petitioner was admitted to the United States on a visitor visa for a limited period from November 13, 2022 through May 12, 2023; applied for asylum during that time; remained in the United States thereafter; and was taken into immigration custody for the first time in August 2026. The record indicates that USCIS issued Petitioner employment authorization on or about May 27, 2025, valid through May 26, 2030, including at the time of her detention. The record indicates that Petitioner resided in the United States for over three years after applying for asylum and following the expiration of her authorized stay. The record indicates that USCIS issued Petitioner's employment authorization years after the expiration of her authorized stay.

Under these circumstances, Petitioner appears similarly situated to cases in which other district courts have recognized that noncitizen asylum applicants have a liberty interest that requires a hearing before any re-detention. See, e.g., Kharitonova v. Albarran, No. 26-1362, 2026 WL 531441, at *2-3 (N.D. Cal. Feb. 25, 2026) (requiring a hearing before any re-detention where a noncitizen entered on a nonimmigrant visa, applied for asylum within one year, and lived in the United States for over a decade before being detained), appeal filed, No. 26-2554, (9th Cir. Apr. 24, 2026); Gagik T. v. Chestnut, No. 26-4337, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (finding that "a noncitizen who has lived at liberty for years while his immigration case proceeds—pursuant to the Government's affirmative decision not to detain him—holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process"). The Court thus finds that Petitioner likewise has a liberty interest in freedom from physical confinement. As the court stated in Gagik T., "[b]y concluding that there was no need to detain Petitioner after [her] B-2 visitor visa had expired,

and instead sanctioning [her] continued presence in the United States by granting . . . [her] employment authorization, the government vested in Petitioner a liberty interest in [her] continued freedom." Id. at *3. Accordingly, the Court turns to the Mathews framework to address the sufficiency of the procedures attending the deprivation of Petitioner's liberty interest.

Starting with the first Mathews factor, Petitioner's private interest in freedom from detention is substantial. However, Ninth Circuit precedent requires the Court to also consider "the process [Petitioner] received during this time" and "the further process that was available to [her]." Rodriguez Diaz, 53 F.4th at 1208. It is undisputed that Petitioner has not received an initial custody redetermination hearing. Though the record indicates that Petitioner received an "administrative interview" on the date of her detention, the record indicates that the interview occurred after Petitioner had already been taken into custody and consisted of three questions: (1) whether Petitioner had any identification or documents from her country; (2) whether Petitioner had any medical conditions that require medication; and (3) whether Petitioner has any minor children for whom she is the sole provider. See Form I-213. Aside from disclosing a medical condition, Petitioner declined to answer these questions, instead requesting counsel. This interview was not a hearing at which an adjudicator determined whether Petitioner was a community danger or a flight risk. The first Mathews factor weighs in Petitioner's favor.

Turning to the second Mathews factor, the risk of erroneous deprivation, the record contains no neutral custody determination and no finding that Petitioner presents a risk of flight or a danger to the community. As Petitioner argues, "[t]he risk of erroneous deprivation under a regime that provides no hearing at all is total." Petition ¶ 44. The second Mathews factor also weighs in Petitioner's favor.

The third Mathews factor requires the Court to consider the Government's interest, and the Court is mindful that in the immigration detention context, it "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Rodriguez Diaz, 53 F.4th at 1208 (internal quotation marks and citations omitted). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." Id.

However, while the Government has a "significant" interest in enforcing its immigration laws, id. at 1209, that interest is diminished where, as here, Petitioner has a pending asylum application, lived in the community for approximately three years while that application was pending, received employment authorization over a year ago, has filed state and federal taxes, and has never missed an immigration appointment or interview. The effort and cost required to provide Petitioner with procedural safeguards before detention—rather than simply detaining her without a hearing—is minimal. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide [p]etitioner notice and hearing on [alternatives to detention] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue."). This factor also weighs in Petitioner's favor.

All three Mathews factors thus weigh in Petitioner's favor. Respondents' detention of Petitioner without a hearing violated her procedural due process rights.

**D. <u>Remedy</u>**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy. Respondents argue that a bond hearing, not release, would be the appropriate remedy. See Answer at 2-3. The Court disagrees.

After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R., 791 F. Supp. 3d at 1036.

Here, the Court finds that Petitioner's detention without a pre-deprivation hearing violated her due process rights and rendered her detention unlawful. Nothing in the record suggests that affording Petitioner a hearing before her seizure was impracticable. To the contrary, the record indicates that an administrative interview occurred on the date of Petitioner's detention, but that interview did not involve a review of Petitioner's custody. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. See Wamsley, 795 F. Supp. 3d at 1324.

To the extent Respondents argue that Petitioner is entitled only to a post-deprivation bond hearing, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, [s]he will already have suffered the injury he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also Wamsley, 795 F. Supp. 3d at 1324; Yao v. Janecka, No. 26-04735, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026) (ordering a noncitizen released where she was admitted to the United States on

a nonimmigrant visa in 2024, timely applied for asylum, obtained work authorization, and was detained in July 2026 at Los Angeles International Airport upon arrival from a domestic flight without a warrant, prior notice, or a hearing; collecting cases finding that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner will have already suffered the potentially erroneous detention). On this record, release is the appropriate remedy to place Petitioner in the position she would have enjoyed absent the due process violation. See Yao, 2026 WL 2666861, at *6.

Nothing in this order shall be construed as limiting Respondents' ability to lawfully re-detain Petitioner in the future in compliance with all applicable authorities and upon affording Petitioner all process she is due. "If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega, 415 F. Supp. 3d at 970.

**E. Attorney's Fees**

Petitioner has requested costs and attorney's fees in this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. See Petition at 16. The EAJA provides in part:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record . . . which is made in the civil action for which fees and other expenses are sought.

28 U.S.C. § 2412(d)(1)(B).

To the extent Petitioner desires to pursue this request, Petitioner should file an application requesting reasonable fees and costs under the EAJA within thirty (30) days.

## IV. ORDER

IT IS THEREFORE ORDERED that:

1. The Petition for Writ of Habeas Corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner Yuejing Cong (A# 246-461-607) from custody on appropriate conditions. Upon release, Respondents shall return Petitioner's personal belongings.

3. Within five (5) days, Respondents shall file a status report confirming compliance with paragraph 2.

4. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

Date: September 14, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge